UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RA'MAR DANIELS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:22-cv-01541-JPH-KMB |
| T. SOLOMON, et al., | ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ra'mar Daniels is a prisoner currently incarcerated at Indiana State Prison. He alleges in this civil action that while he was incarcerated at Pendleton Correctional Facility, Defendants retaliated against him for having filed grievances and lawsuits. He also alleges that Defendant Solomon used excessive force against him when escorting him to a phone call with his attorney. Defendants have moved for summary judgment. For the reasons below, that motion is **DENIED** as to his excessive force and retaliation claims against Defendant Solomon and his retaliation claim against Defendant Niederhamler, and **GRANTED** as to all other claims.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the

record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-

moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

At all times relevant to his complaint, Mr. Daniels was housed in a restrictive housing unit at Pendleton Correctional Facility. Daniels Deposition, dkt. 51-1 at 13. Defendants were correctional employees at the prison.

On July 1, Defendant Ballenger completed Mr. Daniels' annual classification review. He initially qualified for transfer to a level 3 facility, but ultimately remained designated as level 4 due to his recent disciplinary history which included conduct reports for rioting and possessing a weapon. Dkt. 51-3 at 1-2 (Ballenger Interrogatory Responses). Mr. Daniels attests that Defendant Ballenger changed his designation from level 3 to level 4 after Mr. Daniels filed a grievance. Dkt. 51-1 at 31.

On July 7, 2022, Defendant Solomon escorted Mr. Daniels to a telephonic conference. Dkt. 51-1 at 18. Mr. Daniels attests that Defendant Solomon told Mr. Daniels that his situation would improve if he would drop a lawsuit that he had filed against Defendant Downs. *Id.* at 19−20. Defendant Solomon squeezed Mr. Daniels' arm for approximately 10 seconds, leaving Mr. Daniel's arm bruised and red. *Id.* at 27-28. Defendant Solomon then refused to take Mr. Daniels to medical. *Id.* at 19-20. By the time Mr. Daniels was seen by medical approximately seven days later, there was no abrasion or bruising on his arm. *Id.* at 20.

Defendant Solomon disputes Mr. Daniels' testimony, attesting that Mr. Daniels tried to engage him in conversation about Defendant Downs, but Defendant Solomon did not respond. Dkt. 51-2 at 2 (Solomon Interrogatory

3

Responses). He did not take Mr. Daniels to medical because he had no reason to think Mr. Daniels needed or wanted to be seen by medical staff. *Id*.

On June 11, 2022, Defendant Niederhelman signed evaluation papers stating that Mr. Daniels failed to complete a program that would have granted him additional credit time. Dkt. 1 at 3 (Daniels Verified Complaint); dkt. 51-1 at 39-41; dkt 56-1 at 5-7. Mr. Daniels attests that he did complete the program but that Defendant Niederhelman said he didn't in retaliation for Mr. Daniels' grievances and lawsuits. Evidence in the record shows that non-defendant Tanya Ashby acknowledged receiving the essay that Mr. Daniels was required to write to complete the program. Dkt. 56-1 at 12.

The parties agree that Defendant Niederhelman was not Mr. Daniels' caseworker at the time and that she did not come to Mr. Daniels' cell to conduct the evaluation. Dkt. 51-4 at 1 (Niederhelman Interrogatory Responses). Defendant Neiderhelman attested in interrogatory responses that she has no knowledge of Mr. Daniels' June 2022 evaluation. Dkt. 51-4 at 1. She does not address the evaluation forms that appear to have been signed by her. *See* dkt. 56-1 at 5-7.

Mr. Daniels requested video footage of the day he supposedly refused to sign the evaluation forms but was told by Defendant Wargny that he had to limit his request to a four-hour window. Dkt. 56-1 at 1. Because he was attempting to show that Defendant Neiderhelman never visited his cell for the evaluation, and he did not know at what time she claimed to have visited his cell, he was unable to limit his request for video evidence to a four-hour window and no video

evidence was preserved. Dkt. 51-1 at 37-38. He argues that Defendant Wargny refused to preserve the video evidence in retaliation for Mr. Daniels' grievances and lawsuits. Dkt. 1 at 3.

Mr. Daniels testified at his deposition that Defendant Downs told him he would not get the transfer he requested. Dkt. 51-1 at 48. He believes that she said this because he sued her. *Id.* at 49. Although he acknowledges that Defendant Downs did not have authority to approve or deny his transfer, he believes that all the correctional officers at the facility are either in romantic relationships with each other or work together to sell cell phones and drugs within the facility. *Id.* at 50. Thus, Defendant Downs could influence the prison officials who reviewed Mr. Daniels' request for transfer.

Mr. Daniels attests that Defendant Conyers improperly rejected his grievances and that she did so in retaliation for his lawsuits. Dkt. 51-1 at 51.

On July 14, 2022, Deputy Warden Bryant denied Mr. Daniels' classification appeal, stating: "On the evaluation mention[ed], staff attempted to get you to come to the door and you refused to come sign or wake up after reasonable attempts to wake you up were mad[e]. Conduct will be forthcoming for interfer[ing] with staff if you continue these games." Dkt. 56-1 at 10; dkt. 51-1 at 58-59. Ultimately, she did not follow through on the threat of charging Mr. Daniels with a conduct violation. Dkt. 51-1 at 60. Deputy Warden Bryant's responses to interrogatories state that her classification appeal response was based on her review of a statement written by Josh Shavers, which was in turn based on the notes of an unknown caseworker who attempted to complete the

5

evaluation with Mr. Daniels but noted that he refused. Dkt. 51-7 at 1. Neither Mr. Shavers' statement nor the underlying caseworker notes are in the record.

### III.
### Discussion

#### A. Eighth Amendment Excessive Force Claim Against Defendant Solomon

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule applies to malicious or sadistic force that is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam) (cleaned up). Force may be used, however, "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). The level of force that may be used depends on the situation. To determine whether force was malicious or used in good faith, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

Defendant Solomon has not shown that he's entitled to summary

judgment under the *Whitley* factors. Mr. Daniels testified that Defendant Solomon squeezed his upper arm while escorting him to an attorney phone call, bruising his arm. Dkt. 51-1 at 18–20, 26–28. A reasonable jury could find that there was no need for Defendant Solomon to use *any* force and that in connection with using force, he made the statement to Mr. Daniels about dropping his lawsuit. Dkt. 51-1 at 26–28. A reasonable jury could therefore find that Defendant Solomon's use of force was malicious and done to inflict pain rather than done in good faith for a legitimate reason.

Indeed, Defendant Solomon argues about only the extent of the force, contending that he's entitled to summary judgment because the force was *de minimis*. Dkt. 52 at 13–14. While "*de minimis* uses of physical force" are not "cruel and unusual punishments" under the Eighth Amendment, it is a violation to "inflict[ ] pain maliciously or sadistically." *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). "This is true whether or not significant injury [is] evident." *McCottrell v. White*, 933 F.3d 651, 664 (7th Cir. 2019). Here, Mr. Daniels testified that his arm was bruised and that he was in enough pain that he couldn't lie on his arm afterwards. Dkt. 51-1 at 28–29. That's enough to allow a reasonable jury to infer that the force was "the unjustified infliction of harm," and Defendant Solomon is therefore not entitled to summary judgment on Mr. Daniels' excessive force claim. *See McCottrell*, 933 F.3d at 663.

### B. First Amendment Retaliation Claims

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1)

7

the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that Mr. Daniels engaged in protected First Amendment activity by filing grievances and lawsuits, so the Court focuses its analysis on the second and third elements.

**1. Deprivation Likely to Deter Future First Amendment Activity**

Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020).

Under this factor, a reasonable jury could find that Defendant Solomon's squeezing of Mr. Daniels' upper arm was unnecessary, unjustified, and caused substantial pain, and was therefore likely to deter a person of ordinary firmness from exercising his First Amendment rights. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) ("[I]t can be inferred" that unnecessary punishment "would

8

likely deter future First Amendment activity."). The same is true for Mr. Daniels' retaliation claim against Defendant Niederhelman, which alleges the denial of credit time because of documents that Defendant Niederhelman signed saying that Mr. Daniels did not complete a program and refused to participate in an evaluation. The denial of credit time—which otherwise would reduce the length of a prison sentence—would deter a person of ordinary firmness from engaging in First Amendment activities. *See Douglas*, 964 F.3d at 646.

However, Mr. Daniels' retaliation claims against several other defendants fail on this factor. First, Defendant Conyers's improper rejection or denial of grievances would not deter a person of ordinary firmness from exercising his First Amendment rights. Inmates do not have to exhaust administrative remedies rendered unavailable by jail officials before bringing a lawsuit. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."). So, Defendant Conyers' actions did not prevent Mr. Daniels from pursuing any legal claims, and he has identified no other harm caused by the improper denial of his grievances.

Second, Defendant Wargny's denial of Mr. Daniels' requests to preserve video evidence was not a deprivation that would deter a person of ordinary firmness from engaging in First Amendment activity. Mr. Daniels wanted the video evidence to prove that Defendant Niederhelman did not come to his cell to

9

attempt to complete his July 2022 evaluation. But Defendant Niederhelman has admitted that she did not participate in his evaluation. The failure to preserve evidence had no negative impact on Mr. Daniels' ability to litigate this action. And he does not offer any other possible negative impact. Defendant Wargny is entitled to summary judgment.

Third, Defendant Bryant's threat to write a conduct report against Mr. Daniels based on caseworker notes that he refused to participate in his evaluation does not amount to a deprivation that would deter a person of ordinary firmness from engaging in First Amendment activity. Defendant Bryant never actually filed a conduct report against him. This situation is similar to cases when a disciplinary report is filed but later dismissed. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("a single ... disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action."); *Czapiewski v. Zimkiewicz*, 768 F. App'x 579, 582 (7th Cir. 2019). Defendant Bryant is entitled to summary judgment.

Finally, Mr. Daniels' retaliation claim against Defendant Downs fails because, as he acknowledges, she had no authority to approve or deny his request to be transferred to a different facility.[1] Even if the denial of his request

---

[1] Mr. Daniels filed an affidavit with his response that adds allegations that Defendant Downs also told him that he would fail his credit time program and receive additional false conduct reports. Dkt. 54. Defendants' reply asks the Court to strike the affidavit because it raises additional allegations not made in his verified complaint or deposition. Dkt. 57. Mr. Daniels' additional allegations against Defendant Downs do not change the outcome here. There is no evidence in the record that she was involved in Mr. Daniels' credit time program. Nor is there any evidence that Mr. Daniels received a false conduct report after his interaction with Defendant Downs.

would deter a person of ordinary firmness from engaging in First Amendment activity, there is no evidence in the record to support an inference that Defendants Downs was personally involved in the denial of the request. Mr. Daniels' speculation that she influenced others to deny his request is insufficient to survive summary judgment. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)). Defendant Downs is entitled to summary judgment.

### 2. Motivating Factor

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). "Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680-81 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed).

At summary judgment, the burden of proof on whether the protected activity was a motivating factor for the alleged retaliation "is split between the parties." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, a plaintiff "must produce evidence that his speech was at least a motivating factor . . . of the [] decision to take retaliatory action against him." *Id.* The burden then shifts to the defendant "to rebut the causal inference raised by the plaintiff's evidence." *Id.* If the defendant rebuts the causal inference by demonstrating a legitimate reason for the alleged retaliatory action, "the plaintiff must present evidence that the defendant's proffered explanation is pretextual." *Lalvani v. Cook Cnty., Ill.*, 269 F.3d 785, 790 (7th Cir. 2001).

Defendant Ballenger argues that he was not responsible for assigning Mr. Daniels to a level four security classification. Dkt. 52 at 9. His responses to Mr. Daniels' interrogatories contradict that argument, but they also provide a non-retaliatory basis for the classification. Dkt. 51-3 at 3 ("Plaintiff's recent conduct violations rendered Plaintiff a heightened security threat; therefore, Defendant recommended that Plaintiff reside in a security level four (4) facility at that time."). Mr. Daniels has not produced any evidence that Defendant Ballenger's reliance on Mr. Daniels' recent conduct history to justify his recommendation was pretextual. Thus, Defendant Ballenger is entitled to summary judgment.

However, a jury could reasonably infer from the designated evidence that Defendant Solomon used force on Mr. Daniels in retaliation for Mr. Daniels's litigation activities. Dkt. 51-1 at 27–28. A reasonable jury could also find a retaliatory motive for Defendant Niederhelman's signing of documents stating

that Mr. Daniels did not complete a program and refused to participate in an evaluation. Defendant Niederhelman has provided evidence that she was not assigned as a caseworker for Mr. Daniels and did not participate in his July 2022 evaluation, but provides no explanation for why her signature appears on these documents. Other evidence in the record supports Mr. Daniels' assertion that he completed the program, and thus that the evaluation forms signed by Defendant Niederhelman were at best inaccurate. A reasonable juror could conclude from this record that Defendant Niederhelman signed false evaluation records to deter Mr. Daniels from pursuing litigation against Defendant Downs and other prison staff. Defendants Solomon and Niederhelman are therefore not entitled to summary judgment.

## IV.
## Conclusion

Defendants' motion for summary judgment, dkt. [50], is **DENIED** as to his excessive force and retaliation claims against Defendant Solomon and his retaliation claim against Defendant Niederhamler. That motion is **GRANTED** as to all other claims. No partial final judgment shall enter at this time. The **clerk is directed** to terminate all defendants on the docket except for Defendants Niederhamler and Solomon.

Because it is the Court's preference that Mr. Daniels be represented by counsel for trial or any potential settlement conference, the Court will attempt to recruit counsel to represent him. He shall have through June 7, 2024, in which to file a motion for recruitment of counsel or object to the recruitment of counsel on his behalf. The **clerk is directed** to include the motion for counsel

form with Mr. Daniels' copy of this Order. Once counsel has been recruited, the Magistrate Judge is requested to set a status conference to discuss what preparations are needed for trial and to set a settlement conference.

**SO ORDERED.**

Date: 5/17/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

RA'MAR DANIELS
104542
INDIANA STATE PRISON
Electronic Service Participant – Court Only

All electronically registered counsel

Magistrate Judge Kellie M. Barr